**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| G&P Trucking Co., Inc., ) | |
| ) | Civil Action No. 3:14-cv-501 |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| Zurich American Insurance ) | |
| Company, as subrogee of SKF ) | |
| USA, Inc.; SKF USA, Inc., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

Before the court are motions for summary judgment by both Plaintiff G&P Trucking, Inc. ("G&P") and Defendants SKF USA, Inc. ("SKF") and Zurich American Insurance Company ("Zurich"). ECF Nos. 20 (G&P) & 26 (SKF). Zurich is insurer and subrogee of SKF. In this action, G&P seeks a determination of its liability for a trucking accident and a determination as to any limitation of liability available to it. ECF No. 1.

### I. Factual and Procedural Background

On January 14, 2014, G&P moved the court for summary judgment in its favor and asked the court to find that it had no liability under the "Ocean or Combined Transport Waybill," ECF Nos. 20-3 & 26-5 (hereinafter the "Bill of Lading"), or, alternatively, that its liability was limited to $50.00 by the terms of the Delivery Order, ECF Nos. 20-6 & 26-3, or $500.00 by the Carriage of Goods by Sea Act ("COGSA"), Note following 46 U.S.C. § 30701 . ECF No. 20. On March 2, 2015, SKF and Zurich also moved for summary judgment on the issue of liability, asking the court

1

to hold that G&P had not presented evidence of a viable limitation of liability. ECF No. 26.[1] G&P filed a consolidated response in opposition to SKF's motion and reply on April 2, 2015. The court held a hearing on the summary judgment motions on April 14, 2015. On May 6, 2015, the court entered an order requesting supplemental briefing from the parties on the issue of the condition of the goods when they were delivered to G&P in Savannah. ECF No. 43. The parties completed this briefing by May 18, 2015. ECF Nos. 45 & 46.

On June 19, 2015, the court issued an order addressing some of the issues raised by the parties in their summary judgment motions. ECF No. 49 ("June 19 Order"). In that order, the court summarized the underlying facts and various details of the shipping documents involved. *Id*. at 2-6.[2] The court noted the parties' disagreement about the applicable law—COGSA or the Carmack Amendment, 49 U.S.C. § 14706–-and provided background about each provision. *Id*. at 7-9. The court further observed that whether the Bill of Lading is a through bill determines whether COGSA

---

[1] SKF's motion for summary judgment also served as a response in opposition to G&P's motion for summary judgment. ECF No. 27.

[2] The court summarized the various carriers and documents in its June 19 Order: "The parties disagree as to which law governs the shipment at issue in this case. G&P's position is that the shipment is governed by the terms of a bill of lading issued by the ocean carrier, Pantainer (H.K.) Limited ("Pantainer"), doing business as Pantainer Express Line, in Spain where the goods originated at a factory owned by SKF Espanola S.A. ("SKF Espanola"). G&P contends that the bill of lading may extend the provisions of the Carriage of Goods by Sea Act ("COGSA"), Note following 46 U.S.C. § 30701, to the domestic inland portions of the journey. G&P characterizes the document issued by Pantainer as a through bill of lading. SKF, on the other hand, contends that the movement was in fact two shipments, and that the domestic inland portion from Savannah, Georgia, to Crossville, Tennessee, was a second transaction, governed by a delivery order issued in the United States by Panalpina, Inc. ("Panalpina") and by the provisions of the Carmack Amendment, 49 U.S.C. § 14706." ECF No. 49 at 1-2.

2

or the Carmack Amendment applies. *Id.* at 6. The court held the through bill of lading question to be a question of fact resolvable by the court as an exercise of the court's admiralty jurisdiction. *Id.* at 9. The court found the record to be ambiguous and scheduled an evidentiary hearing on the through bill of lading issue. *Id.* at 13. That hearing was held on July 29, 2015. ECF No. 57.

Considering the record as a whole, including the exhibits, depositions, and witness testimony, the court finds that the Bill of Lading is a through bill of lading. COGSA governs the shipment at issue in this case. G&P's liability is limited by a valid Himalaya clause[3] in the Bill of Lading. For the reasons set forth below, the court **grants** G&P's motion for summary judgment and **denies** SKF's motion for summary judgment. This order renders G&P's motion in limine (ECF No. 35) moot; it is, therefore, **denied as moot**.

## II. Law and Analysis

A bill of lading "records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage." A through bill of lading covers both the ocean and inland portions of the transport in a single document. *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 94 (2010) (quoting *Norfolk So. R. Co. v. James N. Kirby, Pty. Ltd.*, 543 U.S. 14 (2004)). Bills of lading may contain a so-called "Himalaya clause," "which extends the bills' defenses and limitations on liability to parties that sign

---

[3]   A Himalaya Clause is a provision in a bill of lading that extends the carrier's defenses and the limitations of COGSA to third parties. Black's Law Dictionary (10th ed. 2014), Himalaya clause. Such clauses take their name from an English case commonly known as *The Himalaya* and reported as *Adler v. Dickson*, 1 Q.B. 158. *See* Michael F. Sturley, *International Uniform Laws in National Courts: The Influence of Domestic Law in Conflicts of Interpretation*, 27 Va. J. Int'l L. 729, 749 n.101 (1987).

3

subcontracts to perform services contemplated by the bills." *Id*.[4]

Determining whether a shipment is governed by a through bill of lading is a question of fact. *Am. Rd. Serv. Co. v. Consol. Rail Corp.*, 348 F.3d 565, 568 (6th Cir. 2003); *see also Capitol Converting Equip., Inc. v. LEP Trans., Inc.*, 965 F.2d 391, 394 (7th Cir. 1992). In an admiralty proceeding, it is the duty of the court to settle factual disputes. *New Jersey Steam Navigation Co. v. Merchant's Bank of Boston*, 47 U.S. 344, 423 (1847) ("[I]t is our duty to settle facts in an admiralty proceeding, when they are material to the merits."). Whether a particular bill of lading is a through bill is to be determined with reference to various factors, including: "(1) whether the bill of lading indicates the final destination for the goods; (2) whether the freight for the entire shipment was prepaid; and (3) whether a separate, domestic bill of lading ever issued." *Custom Rubber Corp. v. ATS Specialized, Inc.*, 633 F. Supp. 2d 495, 504 (N.D. Ohio 2009). The court may also consider other general aspects of the conduct of the shipper and the carriers. *Marine Office of Am. Corp. v. NYK Lines*, 638 F. Supp. 393, 399 (N.D. Ill. 1985) (collecting cases).[5]

*1. Whether the bill of lading indicates the final destination for the goods*

As the court noted in its June 19 Order, the Bill of Lading leaves the "Place of Delivery" blank, and does not, therefore, indicate clearly on its face the final destination of the goods. *See* ECF No. 26-5. G&P urges the court to construe the listing of SKF's Tennessee address in the consignee box as being an indication of the final destination of the goods.

---

[4] The Fourth Circuit does not appear to have considered COGSA since the 2010 Supreme Court decision in *Kawasaki*.

[5] The foregoing paragraph repeats verbatim the framework governing the bill of lading analysis that was set forth in the June 19 Order. ECF No. 49 at 10. The standard is recapitulated here for convenience.

4

A consignee is the "person named in a bill to whom or to whose order the bill promises delivery." Black's Law Dictionary (10th ed. 2010), consignee. Looking only at the document itself, there is ambiguity as to whether the address of the consignee is the final destination of the goods and was so understood by the parties, or, alternatively, whether the final destination of the goods was unclear and was to be provided by the consignee at some date after the issuance of the Bill of Lading.

The deposition of Philip Stender ("Stender"), Panalpina's corporate designee pursuant to Federal Rule of Civil Procedure 30(b)(6), resolves this ambiguity in G&P's favor. During the deposition, counsel for SKF questioned Stender about a shipment communication platform printout, "an internal document" that gives various information about the shipment. ECF No. 60 at 12 (Stender Depo.); *see also* ECF No. 60-1 at 11 (Printout). When he was asked whether Savannah was the final destination, Stender demurred. For example:

> Q: What is the final destination listed under the file characteristics for the Pantainer Hong Kong Limited waybill?
>
> A: Savannah. And then we delivered it on to Crossville, Tennessee as part of our contract rates.
>
> Q. I understand that. What is the final destination that is listed for this particular waybill?
>
> A. In the file characteristics it just says: Savannah, final destination. They shipped it as far–Spain shipped it as far as Savannah. Then I picked up the ball and ran with it there and trucked it from Savannah to Crossville, the place of delivery.

ECF No. 60 at 15:3-17; *see also id.* at 20:2-23.

Stender testified that he understood the listing of SKF USA as the consignee to be tantamount to a listing of a place of delivery:

> Q: And as far as this particular waybill goes, the port of discharge for the main carriage was Savannah, correct?
>
> A: Correct.
>
> Q: And the final destination of the goods for this particular waybill according to the internal Panalpina documents is Savannah, correct?
>
> A: Incorrect. Consignee, again, you have to look at the consignee spot. Partner info, Crossville, Tennessee. We always move this freight from Spain via Savannah to Crossville. It never stops in Savannah. It's always delivered to Crossville.
>
> Q: I understand that. However, in this document it says final destination is Savannah, correct?
>
> A: Yes. That's what the document says, but is also says Crossville, Tennessee.
>
> Q: That says consignee is Crossville, Tennessee, correct?
>
> A: Correct. It also says consignee Crossville, Tennessee on the Pantainer waybill. If you, again, look down below on partner info . . . it shows Crossville, Tennessee.

ECF No. 60 at 17:22-18:20. The court concludes from this testimony that the listing of SKF as consignee on the Bill of Lading was understood by the parties to be a designation of the place of delivery, or the final destination, of the goods. The inclusion of the final destination of the goods on the Bill of Lading favors a finding that the Bill of Lading is a through bill of lading.

   *2. Whether the freight for the entire shipment was prepaid*

At the evidentiary hearing, the court heard the testimony of Stanley Nutt ("Nutt"), a corporate employee of G&P. Nutt testified that the designation "prepaid" is a term of art in the shipping industry. It does not mean, as the term does in everyday usage, that the shipper pays the carrier the total amount of the bill before the carrier takes the goods. In the shipping industry, the term "prepaid" indicates that the shipper has arranged a line of credit to cover payment of the freight

6

charge. Nutt testified that the shipment in this case was prepaid according to the meaning of the term in the shipping industry. The court concludes that the freight for the shipment was prepaid. This conclusion favors a finding that the Bill of Lading is a through bill.

   *3. Whether a separate, domestic bill of lading ever issued*

   The court noted in its June 19 Order that this third factor:

> is no longer of much analytic value after *Kawasaki* in a case such as this. While the issuance of a separate bill of lading strongly implies that the case is within the Carmack Amendment, and therefore, that the original bill of lading is not a through bill, the Supreme Court held in *Kawasaki* that the absence of such a separate, domestic document does not *ipso facto* render the Carmack Amendment inapplicable, and, by default, render the original bill a through bill. *Kawasaki Kisen*, 561 U.S. at 103 (distinguishing several appellate cases where those courts placed primacy on the issuance or non-issuance of a separate domestic bill of lading). Thus, there exists the possibility that G&P may have erroneously failed to issue a separate bill of lading. That possibility substantially limits the value of this third factor in evaluating whether the Bill of Lading is a through bill.

ECF No. 39 at 12. With that caveat in mind, however, the court observes that G&P did not issue a separate bill of lading in this case. To the extent this third factor remains relevant in the post-*Kawasaki* landscape, it also favors a finding that the Bill of Lading is a through bill.

   *4. Other general aspects of the conduct of the shipper and the carriers*

   In addition to the three enumerated factors, the court may also consider other general aspects of the conduct of the shipper and the carriers. *Marine Office of Am. Corp. v. NYK Lines*, 638 F. Supp. 393, 399 (N.D. Ill. 1985) (collecting cases). The court finds the billing arrangements used by the parties to be particularly relevant. At the evidentiary hearing, copies of the invoices sent by Panalpina to SKF were introduced. ECF No. 60-1 at 8-9. These invoices reveal that Panalpina sent SKF one invoice which included charges for the inland freight in Spain, the ocean freight, and the

"inland freight - domestic delivery." *Id*. In other words, the invoice reflects billing for combined transport from Fontellas, Spain, to Crossville, Tennessee. Additionally, G&P's invoices were introduced into evidence. ECF No. 60-1 at 13-14. These invoices reveal that G&P billed Panalpina—not SKF—for its services. *Id*. These invoices show that SKF contracted with Panalpina to move the goods from Spain to Tennessee and never independently contracted with G&P for the domestic inland freight potion of the journey. Stender's testimony confirms that SKF never independently contracted with G&P:

> Q: Is this [ECF No. 60-1 at 8] a document that Panalpina would have issued to its customer for payment of charges for this shipment?
>
> A: Correct, for door-to-door charges.
>
> Q: Who was the customer that this invoice was issued to?
>
> A: SKF in Kulpsville, Pennsylvania.
>
> Q: Is that SKF USA, Inc.?
>
> A: Yes.
>
> Q: What charges are you invoicing to SKF in this invoice?
>
> A: Origin handling charges, origin export clearance, ocean freight, USA terminal handling charge, inland freight to US door, customs clearance, end bond–you know, notificat[ion]–end bond is our customs clearance documentation and transfer documents. Total transportation, in other words, from door to door.
>
> [ . . . .]
>
> Q: When you say door to door, that means from the ground origin facility in Spain to the ground destination facility in Tennessee?
>
> A: That's correct.
>
> Q: . . .. But is this invoice specifically invoiced for both ocean freight, tariffs charges, and ground freight carriage charges?

> A: Yes, it does. Again, it's an all-inclusive invoice. It has all of the
> various charges in there.

ECF No. 60 at 6:4-7:17; *see also id*. at 7:25-8:13. The course of conduct evidenced by the billing documents and Stender's testimony indicates that the Bill of Lading is a through bill of lading covering shipment of the goods door-to-door from Spain to Tennessee. In light of the foregoing, the court finds the Bill of Lading to be a through bill of lading. The court therefore concludes that COGSA governs the shipment at issue in this case.

By its terms, COGSA applies only to shipments from United States ports to ports of foreign countries and vice versa. *Kawasaki*, 561 U.S. at 94. The statute, however, allows parties "the option of extending [certain COGSA terms] by contract" to cover "the entire period in which [the goods] would be under [a carrier's] responsibility, including [a] period of . . . inland transport." *Id.* (quoting *Kirby,* 543 U.S. at 29). "While COGSA does not provide any limitation of liability in favor of third parties, the parties, by the bill of lading, may extend to third parties the limitation of liability granted the carrier [by COGSA]. . . . Such limitations of liability in the bill of lading in favor of third parties, however, are to be 'strictly construed.'" *Caterpillar Overseas, S.A. v. Marine Transp. Inc.*, 900 F.2d 714, 725 (4th Cir. 1990) (citations omitted). A carrier's liability under COGSA is limited to $500.00 "per package." Note following 46 U.S.C. § 30701.

The Terms and Conditions associated with the Bill of Lading specifically limited Carrier's liability to that provided by the COGSA, i.e., $500.00 per package. ECF Nos. 20-5 & 26-8 (hereinafter the "Terms and Conditions")[6] at ¶ 8.1. These terms and conditions also include other

---

[6] The parties have submitted two slightly differing versions of the Terms and Conditions. That submitted by G&P is dated 2011. ECF No. 20-5 at 12. That submitted by SKF is dated 2015. ECF No. 26-8. Because the 2015 version could not have governed a Bill of Lading issued in 2013, the court uses the 2011 version

9

relevant provisions.

First, in its "Definitions" section, the Terms and Conditions defines: "Sub-Contractors" as including "the owners, charterers and operators of any Vessel, stevedores, terminal operators, forwards, groupage operators, consolidators, warehouse operators, road, rail and air transport operators, and other independent contractors employed directly or indirectly by or for Carrier in the performance of any of Carrier's obligations hereunder, and including subcontractors of any degree." ECF No. 20-5 at 2.

Second, the Terms and Conditions also includes provisions constituting a so-called "Himalaya Clause":

> 4.1 Carrier may sub-contract directly or indirectly on any terms the Carriage or any of its obligations hereunder.
>
> 4.2 Merchant warrants that no claim or demand shall be made against any person whomsoever by whom the Carriage is performed or undertaken (including Carrier's servants, agents and Sub-Contractors) other than Carrier which imposes or attempts to impose on any such person or any vessel owned or operated or controlled by any such person, any liability whatsoever in connection with the Goods or the Carriage or this Waybill, whether or not arising out of negligence on the part of such person . . . . Every such person shall have the benefit of all Rights and Defenses herein provided for the benefit of or otherwise available to Carrier as if the same were expressly made also for such person's benefit.

*Id*. at 3. The Terms and Conditions of the Bill of Lading extend COGSA to the domestic inland portions of the shipment at issue in this case. G&P was a subcontractor of Panalpina and is therefore shielded from liability by the Bill of Lading's Himalaya clause.

SKF argues that the Bill of Lading was issued by Pantainer (H.K.) Limited ("Pantainer") and

---

in this order.

10

that its Himalaya clause can only apply to subcontractors of Pantainer, not subcontractors of Panalpina. Laura Brennan, the country ground transportation manager for Panalpina in the United States, testified that "Pantainer is a separate legal entity [from Panalpina] which handles the port-to-port move for Panalpina's forwarding entity." ECF No. 59 at 5:14-18. Although the Bill of Lading is on Pantainer letterhead, the internal document behind the Bill of Lading indicates that it was signed by, and therefore issued by, "Panalpina Transp. Mundiales S.A." ECF No. 60-1 at 11. Panalpina Transp. Mundiales S.A. also appears on the face of the Bill of Lading itself. *E.g.*, ECF No. 26-5 at 2. The court concludes from Stender's deposition that the Bill of Lading was issued by "Panalpina Bilbao," or the Spanish office of Panalpina. *See* ECF No. 60 at 16:13-25; 19:5-22. The court therefore rejects SKF's contention that the Bill of Lading was issued by Pantainer. The Bill of Lading was issued by Panalpina and covers all subcontractors used by Panalpina, including, for example, G&P, Pantainer itself, and Hapag-Lloyd. SKF's recourse is, therefore, against Panalpina rather than any of Panalpina's subcontractors such as G&P. The court concludes that, pursuant to the terms of the Bill of Lading, G&P has no liability to SKF.[7]

---

[7] This conclusion bars SKF's Carmack Amendment and negligence counterclaims. Summary judgment is, therefore, granted to G&P on SKF's two counterclaims.

11

### III. Conclusion

In accordance with the foregoing, the court **grants** G&P's motion for summary judgment (ECF No. 20) and **denies** SKF's motion for summary judgment (ECF No. 26).  Because summary judgment has been granted to G&P, G&P's motion in limine, ECF No. 35, is **denied as moot**.

**IT IS SO ORDERED.**

                                                  s/ Margaret B. Seymour
                                                  Margaret B. Seymour
                                                  Senior United States District Judge

Columbia, S.C.
August 19, 2015.